UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**
       **Plaintiff,**

vs.                                                               CASE NUMBER: 8:19-cr-00068-SCB-TGW

**RICHARD F. JENSEN, III,**
       **Defendant.**
_____/

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The Defendant, Richard F. Jensen, moves this Court pursuant to Fed. R. Crim. P. 12(b)(3)(c) and the Fourth Amendment to suppress The evidence and data from any computer or device searched in whole or in part via a password derived from the illegal search of the Iphone on Mr. Jensen  (as to the Fifth and Sixth Amendment arguments) and all evidence obtained with regard to the staleness argument. The grounds for this Motion are as follows:

1)       On February 20, 2019, a grand jury indicted Richard F. Jensen III for allegedly knowingly attempting to persuade, induce, entice, and coerce a minor in sexual activity in violation of 18 U.S.C. § 2422(b), and knowingly attempting to transfer obscene matter to a minor in violation of 18 U.S.C. § 1470.

2)       On March 8, 2016, a federal search warrant was executed at the residence of Mr. Jensen located at 625 Channing Drive NW, Atlanta, Georgia 30318.

3)       The alleged criminal acts that are the basis for the search warrant occurred from May 23, 2015 through June 4, 2015. This included emails and text messages with an undercover agent posing as a fictitious mother and twelve year old daughter.

4) Mr. Jensen was not at the residence when law enforcement officers arrived at the residence to execute the search warrant. Mr. Jensen arrived after law enforcement arrived on scene to execute the search warrant.

5) When Mr. Jensen arrived to the residence, law enforcement instructed him to exit his vehicle, and he complied.

6) Mr. Jensen immediately stated he wanted an attorney.

7) Mr. Jensen was searched for weapons and his cell phone was removed from his person.

8) Mr. Jensen asked Special Agent Diana Ford (SA Ford) if he could use his phone to contact his attorney. Mr. Jensen had his attorney's cell phone number saved in his cell phone. The attorney's cell phone number is not listed on the attorney's website. Also, it was approximately 7:00 a.m., and the attorney would not likely have been in the office, if Mr. Jensen had called the attorney's office phone number.

9) Mr. Jensen was only allowed to call his attorney via his cell phone, if he provided his password to unlock his phone to law enforcement. SA Ford requested the cell phone password to unlock the phone before returning the phone to Mr. Jensen to make the call.

10) The cell phone in question is an Apple iPhone. Without the password it is not believed that law enforcement would have been able to unlock the phone. Furthermore, being able to unlock Mr. Jensen's cell phone allowed them access to his iCloud account and all of his passwords for other devices and accounts which had been stored for safekeeping on the iPhone.

11) Many electronic devices were seized from Mr. Jensen's residence including an Apple MacBook Pro Laptop computer which was password protected and encrypted. The

password for the MacBook was stored on Mr. Jensen's iPhone. Without the password to Mr. Jensen's iPhone, they could not decrypt the laptop and search it.

## MEMORANDUM OF LAW

### I.     Fifth Amendment

The Fifth Amendment of the United States Constitution guarantees that, "No person...shall be compelled in any criminal case to be a witness against himself..." The Government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Before a person in custody is interrogated, he must be advised of his right to remain silent; that anything he says can and will be used against him; that he has the right to consult a lawyer and the right to have lawyer present during an interrogation; and that if he cannot afford a lawyer, a lawyer will be appointed to represent him. *Id*. at 467-73. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Id*. at 444.

To determine whether a person is in custody, courts ascertain whether, "in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (citations omitted).  "[C]ourts must examine ―all of the circumstances surrounding the interrogation.‖" *Id*. (citations omitted).

Independent of whether *Miranda* warnings are required, "the court must still rule on the confession's voluntariness." *Jarrell v. Balkcom*, 735 F.2d 1242, 1252 (11th Cir. 1984).  A statement is not voluntary if it is "extracted by any sort of threats or violence, or obtained by any

direct or implied promises, or by the exertion of any improper influence." *Harris v. Dugger*, 874 F.2d 756, 761 (11th Cir. 1989). Voluntariness "depends on whether, under all of the surrounding circumstances, the statement was the product of the accused's free and rational choice." *United States v. Jones*, 32 F.3d 1512, 1516 (11th Cir. 1994).

To fall within the Fifth Amendment's protections a person must show (1) compulsion, (2) a testimonial communication or act, and (3) incrimination. *United States v. Doe (In re Grand Jury Subpoena Duces Tecum)*, 670 F.3d 1335, 1341 (11th Cir. 2012).

The Court in *Riley v. California*, 573 U.S. 373, 396-97 (2014), correctly pointed out that a cell phone "not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." Thus, the search of a cell phone exposes the government to more information about an individual than the most exhaustive search of the house. *Id*. at 396.

As the court in *United States v. Sanchez*, 334 F.Supp. 3d 1284 (N.D. Ga. September 12, 2018) stated, case law indicates that providing a cellphone password is incriminating testimony protected by the Fifth Amendment. The *Sanchez* court cited and quoted several district court cases as well as the Eleventh Circuit Court of Appeals to support its position including:

> *In re Grand Jury*, 670 F.3d at 1346 (holding that Doe's "decryption and production of the contents of the hard drives would sufficiently implicate the Fifth Amendment privilege" because the "decryption and production would be tantamount to testimony by Doe of his knowledge of the existence and location of potentially incriminating files; of his possession, control, and access to the encrypted portions of the drives; and of his capability to decrypt the files"); *SEC Civil Action v. Huang*, No. 15-269, 2015 WL 5611644, at *1-4, 2015 U.S. Dist. LEXIS 127853, at *3-11 (E.D. Pa. Sept. 23, 2015) (finding the defendants could invoke their Fifth Amendment right against self-incrimination to challenge production of their smartphone passcodes because production of passcodes was testimonial in nature); *United States v. Kirschner*, 823 F.Supp.2d 665, 669 (E.D. Mich. Mar. 30, 2010) (quashing subpoena for testimony about computer password on Fifth Amendment grounds because the government

>sought to require the defendant "to divulge through his mental processes his password – that will be used to incriminate him").

*Sanchez*, 334 F.Supp. 3d at 1295.

The case here is similar to *United States v. Ansah*, 2018 WL 4495523 (N.D. Ga. June 12, 2018), (Report and Recommendation adopted at 2018 3414318 (N.D. Ga. July 13, 2018)). There U.S. Postal Inspectors executed a search warrant at the defendant's residence. *Id*. at *1. The defendant was temporarily restrained at the onset, but was later told he was not under arrest, that he could leave, and he was not required to answer any questions. *Id*. at *2. The inspectors informed the defendant they would be seizing his phone, and the defendant was upset about being deprived of his phone. *Id*. The inspectors informed him that if he gave them the password to the phone, they could make an image of the phone and return the phone to him much faster. *Id*. About 18 minutes after the interview began the defendant stated he wanted his lawyer. *Id*. However, the inspectors made significant commentary about not believing some of what the defendant stated. *Id*. The defendant then said his attorney's phone number and other numbers he needed were in his phone's contacts. *Id*. Inspector Petronis responded by saying he would get the defendant "any phone [number] you need," but "without a passcode it's gonna take a while…" *Id*. The defendant relented and gave up his passcode. *Id*.

The court found that the defendant did not voluntarily provide his password because he was induced by the inspectors. *Id*. Specifically, the defendant was told they were "not going to search his emails or anything like that." *Id*. at *6. Also, the defendant gave his password for the limited purpose of getting phone numbers out of it. *Id*. at *7. Only after the password was provided did the inspectors ask for consent to search. *Id*. The government did not meet its "burden to show that the Defendant voluntarily shared his password, meaning that it was not

induced by a deception of law or false assurance, and that Defendant was able to make a rational choice with full appreciation of the 'pros' and 'cons' of disclosure." *Id.*

Here, Mr. Jensen arrived to his residence with law enforcement gathered to execute a search warrant on the residence. Because the agents were executing a search warrant, there was a significant show of force: law enforcement had automatic weapons, ballistic shield, blinding lights shined on Mr. Jensen, and Mr. Jensen was surrounded by heavily armed and armored officers. He was immediately told to exit his vehicle. Once he complied, Mr. Jensen was searched and his cell phone was seized. Mr. Jensen immediately invoked his right to an attorney.

A little bit after his seizure, Mr. Jensen asked for his phone to call his lawyer at the lawyer's personal cell phone number, as opposed to his office number, because the office was not open at 7:00 a.m. The cell phone was password protected. SA Ford requested the password to unlock it, which Mr. Jensen could do himself, before returning it to him to make a call. Alternatively, Mr. Jensen's phone could have been unlocked through his fingerprint, which the agent should have known prior to asking for his password when she attempted to unlock it without a password. Mr. Jensen simply could have put his thumb on the unlock screen without providing the password.[1] Mr. Jensen only gave the password for the limited purpose of calling his attorney like the defendant in *Ansah*. *Id.* at *7.

Once Mr. Jensen arrived to his residence, Mr. Jensen was not free to leave the scene. Mr. Jensen had even been told that he was in temporary custody. Mr. Jensen had no choice but to provide the password so that he could talk to his lawyer, which is an exercise of his Constitutional rights. The information stored on Mr. Jensen's cell phone included various

---

[1] SA Ford also could have given Mr. Jensen the phone back to input his password once, and had Mr. Jensen return the phone to the agent to make sure Mr. Jensen had not altered or deleted anything. Then Mr. Jensen could have scrolled through his contacts with the agent watching. Once Mr. Jensen found his attorney's contact information, Mr. Jensen or the agent could have written it down for Mr. Jensen to make the call on another phone.

passwords including to his laptop computer. Asking for Mr. Jensen's cell phone password violated his Fifth Amendment right to silence after he invoked his right to an attorney. Furthermore, Mr. Jensen was not free to leave the scene as he was told to exit his vehicle upon his arrival. Under the circumstances, a reasonable person would not have felt free to leave.

**II.     Sixth Amendment**

The right to the assistance of counsel guaranteed by the Sixth Amendment "is indispensable to the fair administration of our adversarial system of criminal justice." *Maine v. Moulton*, 474 U.S. 159, 168 (1985). "[T]he right to counsel safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding." *Id*. at 169. The right to the assistance of counsel is not limited to participation at trial. *Id*. at 170. "[T]o deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Id*.

"Recognizing that the right to the assistance of counsel is shaped by the need for the assistance of counsel, we have found that the right attaches at earlier, 'critical' stages in the criminal justice process —where the results might well settle the accused's fate and reduce the trial itself to a mere formality.'" *Id*. (quoting *United States v. Wade*, 388 U.S. 218, 224 (1967)) (other citations omitted). Courts have held that the right to counsel attaches at least after an individual has been indicted. *Id*. Generally, the point at which adversary proceedings commence is determinative of the presence of the right to counsel. *Lomax v. State of Alabama*, 629 F.2d 413, 415 (5th Cir. 1980).[2]

---

[2] The Eleventh Circuit has adopted as binding precedent Fifth Circuit decisions prior to October 1, 1981. *Bonner v. Prichard*, 661 F. 2d 1206 (1981).

Once the right to counsel has attached and been asserted, government actors must honor it. *Moulton*, 474 U.S. at 170. "The Sixth Amendment also imposes on the [government] an affirmative obligation to respect and preserve the accused's choice to seek this assistance." *Id*. at 171.

Here, Mr. Jensen invoked his right to counsel immediately upon being told to exit the vehicle. However, SA Ford had Mr. Jensen give her his cell phone password to unlock the phone so that he could call his attorney. Mr. Jensen could easily have entered his own password, but the agent would not give his cell phone without getting his password first. After Mr. Jensen made his call to his attorney, the cell phone was again seized and later searched using the password he provided to the SA Ford. The only way Mr. Jensen could access his attorney's phone number and call him was from his own cell phone. Mr. Jensen had his attorney's personal cell phone number, and attorney's office was not open yet because it was about 7:00 a.m. Requesting Mr. Jensen's cell phone password violated his right to counsel after he had already invoked because the information is testimonial.

While the Government had not initiated formal proceedings (indictment) against Mr. Jensen, the enticement actions Mr. Jensen allegedly committed were all committed during phone calls, text messages, and emails with Special Agent Botterbusch. The allegedly incriminating information had already been gathered by law enforcement prior to the execution of the search warrant during his calls, texts, and emails with the undercover special agent. All of this is to say all of the pertinent information to charge Mr. Jensen including Mr. Jensen's identity was already known. Furthermore, the agents had to go to a judge to get the search warrant; thus, the agents engaged in a judicial process. Also, Mr. Jensen's wife had been told multiple times that Mr. Jensen would be arrested that day or within days. Under the circumstances, the situation became

very adversarial for Mr. Jensen, and the agents had availed themselves of the judicial process to get the search warrant of the residence. Therefore, the Court should deem that Mr. Jensen's Sixth Amendment right to counsel had already attached.

### III. Fruit of the Poisonous Tree

Any evidence derived from Mr. Jensen's cell phone, including passwords for his laptop, should be determined to be fruit of the poisonous tree under the exclusionary rule, which bars admission of evidence obtained in violation of the Constitution including evidence derived from the illegal conduct, as well as other incriminating evidence derived from the primary evidence. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112-1113 (11th Cir. 1990) (citing *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939)). Here the fruit is sufficiently connected to the poisonous tree. *See Id.* at 1113. "The doctrine of the fruit of the poisonous tree extends to evidence obtained in violation of an accused's Sixth Amendment right to counsel as well as violation of the Fifth Amendment." *Id*. The evidence and data from any computer or device searched in whole or in part via a password derived from the illegal search must be suppressed.

### IV. Staleness

Under the Fourth Amendment, probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The staleness doctrine "requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000). When

evaluating staleness, courts consider the length of time, "nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Id*. at 1265 (internal quotation marks omitted). Probable cause can be established from stale information if "the government's affidavit updates, substantiates, or corroborates the stale material." *United States v. Jimenez*, 224 F.3d 1243, 1249 (11th Cir. 2000) (internal quotation marks omitted).

Here, Mr. Jensen's interactions with the fictitious mother and daughter began on May 23, 2015 and ended on or about June 4, 2015. On or about June 4, 2015, Mr. Jensen called SA Botterbusch and left her a voicemail indicating that he knew the fictitious mother and daughter were not real and that SA Botterbusch was the agent behind the investigation. On June 4, 2015, SA Botterbusch called Mr. Jensen back. In the conversation that ensued, Mr. Jensen explained that he knew the mother and daughter were not real and that he had done internet research and discovered a MySpace page, Facebook page, and an online article from the newspaper, NW Herald. This eventually led him to an article tying SA Botterbusch to the email (lilgymbrat13) used by the fictitious daughter, as it was used by SA Botterbusch in a prior investigation. Mr. Jensen conducted this investigative research of looking up the individual because he was working on trying to gather research for a book on sex, the internet, the psychology of people doing role playing fantasies, and adopting fake personas. So, Mr. Jensen sought to discover the identity of the fictitious mother and possibly interview the individual. Upon learning the fictitious mother was law enforcement, he sought to interview her. Mr. Jensen explained this to the SA Botterbusch; however, he felt like he was being treated more like a suspect of a crime than the journalist or author that he was. As a result, Mr. Jensen terminated the phone call and stated he needed an attorney.

Given that Mr. Jensen had discovered SA Botterbusch's investigation and sting operation, contacted SA Botterbusch, and stated he believed he was being treated like a suspect, law enforcement should have sought a search warrant expeditiously since Mr. Jensen knew he was the target of a federal criminal investigation.[3] This is because Mr. Jensen suspected he could be facing criminal charges and could destroy any evidence of criminal activity directly related to his interactions with the fictitious mother and daughter and any other potential crimes including child pornography in light of the fact that cases involving enticing minors often include possession of child pornography.[4] This is not to suggest Mr. Jensen at any time had child pornography on his electronic devices at any time, but that the long delay in getting a search warrant afforded him the opportunity to do so if he had had any contraband on the devices. The failure to get a search warrant quicker, and in this case the nine month delay, also allowed for any information on the computer hard drives to be overwritten by other data intentionally or unintentionally. However, a search warrant for Mr. Jensen's residence was not obtained until March 8, 2016, nine months after the alleged criminal activity.

Any alleged probable cause in the search warrant was stale under the circumstances as the government lacked any affidavit updates, and did not substantiate or corroborate the stale material. The affidavit does not offer any reason for the delay in obtaining the warrant. The delay in fact undermines their very investigation as had they been truly concerned about Mr. Jensen being serious, no reasonable law enforcement officer would have delayed nine months. Therefore, the search warrant lacked probable cause to search Mr. Jensen's residence under the

---

[3] In the recorded phone call with Agent Botterbusch, she insists that Mr. Jensen spoke to a mother and child. He insists there was no mother or child and demands that the mater be cleared up. Considering the agent's concern from the beginning of the phone call about how he identified her as an undercover officer, her statement that there was a child and a mother is both not factual and odd.

[4] As of the date of this motion, the government has not revealed in discovery that any child pornography was located on the media searched because Mr. Jensen did not possess any child pornography.

circumstances because the search warrant had stale information and there was no probability of Mr. Jensen retaining any alleged contraband under the circumstances.

### CERTIFICATE OF CONFERRAL

Counsel for the Defendant did confer with the Government, and the Government does oppose the motion and relief requested herein.

**WHEREFORE**, Defendant respectfully requests that this Honorable Court grant the present Motion and suppress all evidence derived from the search of his residence, cell phone, and the fruits of the poisonous tree. The Defendant is specifically requesting a hearing on the merits.

Respectfully Submitted,

_s/Michael P. Maddux_
Michael P. Maddux, P.A.
Florida Bar No.: 0964212
2102 West Cleveland Street
Tampa, Florida 33606
Attorney for Defendant
Phone: (813) 253-3363
Fax: (813) 253-2553
E-mail: mmaddux@madduxattorneys.com

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 14th day of June, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

_s/Michael P. Maddux_
Michael P. Maddux, Esquire